IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY ___ D.C.

05 MAY 19 AM 10: 13

ROBERT R. DI TROLIO
CLERK, U.S. DIST. CT.
W.D. OF TN, MEMPHIS

CLEMMIE SALES,

    Plaintiff,

v.                                                    No. 03-2946 B

FAYETTE COUNTY, et al.,

    Defendants.

---

ORDER GRANTING
MOTION OF DEFENDANTS FOR SUMMARY JUDGMENT
AND DISMISSING CASE

---

## INTRODUCTION

This lawsuit was brought by the Plaintiff, Clemmie Sales, against the Defendants, Fayette

County, Tennessee; Fayette County Sheriff Bill Kelley; Deputies Zack Vierheller; Hilton Cohea and

Mike Wilhite, alleging, pursuant to 42 U.S.C. § 1983, violation of her civil rights under the First,

Fourth, Sixth and Fourteenth Amendments. The Plaintiff also asserts claims under Tennessee state

law. In the instant motion, the Defendants move for summary judgment as to all the Plaintiff's

claims under Rule 56 of the Federal Rules of Civil Procedure.

## STANDARD OF REVIEW

Rule 56 provides in pertinent part that a

> . . . judgment . . . shall be rendered forthwith if the pleadings, depositions, answers
> to interrogatories, and admissions on file, together with the affidavits, if any, show
> that there is no genuine issue as to any material fact and that the moving party is
> entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91

This document entered on the docket sheet In compliance
with Rule 58 and/or 79(a) FRCP on 5-19-05

58

L.Ed.2d 265 (1986); Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir. 1988). In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on her pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324, 106 S.Ct. at 2553. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S.Ct. at 1356. These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). The "judge may not make credibility determinations or weigh the evidence." Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

## FACTS[1]

The instant action arises from the allegedly wrongful arrest of the Plaintiff by Fayette County sheriff's deputies. On March 7, 2003, Sales, employed as a school bus driver for the Fayette County

---

[1] The Plaintiff maintains in her response to the motion that the Defendants violated LR7.2(d)(2) of the Local Rules of this district, which requires that

[o]n every motion for summary judgment, in addition to citations to appropriate legal authorities, the proponent of the motion shall designate in the accompanying memorandum by serial numbering each material fact upon which the proponent relies in support of the motion and shall affix to the memorandum copies of the precise portions of the record relied upon as evidence of each material fact.

It appears to the Court, however, that the Defendants have complied with the Rule.

school district, was transporting students from school when an altercation occurred on the bus between two students, Jeremy Voyles and Josh Clayton. The Defendants contend that Kim Rowe, the mother of Jeremy Voyles and Sebastian Rowe, another bus passenger, called the Fayette County Sheriff's Department the same day and lodged a complaint concerning the assault of her son on the bus.

After investigating the matter, Defendant Vierheller determined that charges were appropriate against Sales for the Tennessee state law crimes of child abuse and neglect, criminal responsibility for the conduct of another and obstruction of justice. On March 14, 2003, Defendant Wilhite, also a Fayette County Deputy Sheriff, executed four arrest warrants on the Plaintiff at her home, handcuffing her and placing her in his patrol vehicle. It is the Defendants' contention that Wilhite transported Sales to the Fayette County Jail, led her into the facility for processing, and had no further interaction with her. Defendant Cohea submits that he accompanied Wilhite to the Plaintiff's home on the night of her arrest. He insists that he was present only for safety purposes and that he drove a separate patrol car and had no direct contact with Sales.

Upon her arrival at the jail, Sales' handcuffs were removed and she placed a call to Defendant Fayette County Sheriff Kelley. The Plaintiff contends that he told her she should not have been arrested. She was not placed in a cell and, shortly after speaking with the Sheriff, was released on her own recognizance. Sales was told to return for court on April 2, 2003, at which time all criminal charges against her were dismissed. The Plaintiff complained to Sheriff Kelley on at least two occasions concerning Vierheller's actions. Kelly investigated her complaints and interviewed Vierheller. According to the officer, he was neither disciplined nor written up.

3

<u>ARGUMENTS OF THE PARTIES AND ANALYSIS</u>

Section 1983 imposes liability on any "person who, under color of any statute, ordinance, regulation, custom or usage, of any State" subjects another to "the deprivation of any rights, privileges, or immunities secured by the Constitution or laws." 42 U.S.C. § 1983. A § 1983 plaintiff must establish "(1) that there was the deprivation of a right secured by the Constitution and (2) that the deprivation was caused by a person acting under color of state law." <u>Wittstock v. Mark A. Van Sile, Inc.</u>, 330 F.3d 899, 902 (6th Cir. 2003). "Section 1983 is not the source of any substantive right, but merely provides a method for vindicating federal rights elsewhere conferred." <u>Humes v. Gilless</u>, 154 F.Supp.2d 1353, 1357 (W.D. Tenn. 2001).

The Plaintiff's claims focus primarily on the Fourth Amendment, which, made applicable to the states by its incorporation into the Fourteenth Amendment, protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV; <u>see also</u> <u>Radvansky v. City of Olmstead Falls</u>, 395 F.3d 291, 302 (6th Cir. 2005). Thus, the Constitution does not prohibit all seizures of the person, but rather those made without proper authorization. Such seizures are presumptively unreasonable. When an arrest occurs, the Constitution requires, in order for the Fourth Amendment's reasonableness standard to be satisfied, that it be supported by probable cause. <u>Cunningham v. Reid</u>, 337 F.Supp.2d 1064, 1072 (W.D. Tenn. 2004). Based upon the Fourth Amendment right to be arrested only upon probable cause, the Court must address whether the evidence, when construed most favorably to Sales, demonstrates the existence of a genuine issue of material fact as to whether she was arrested without probable cause. <u>See</u> <u>Crockett v. Cumberland Coll.</u>, 316 F.3d 571, 579-80 (6th Cir. 2003).

4

If probable cause was absent, her arrest violated the Fourth Amendment.  See id. at 580.  As the

Sixth Circuit explained in Crockett,

> [f]or a police officer to have probable cause for arrest, there must be facts and
> circumstances within the officer's knowledge that are sufficient to warrant a prudent
> person, or one of reasonable caution, in believing, in the circumstances shown, that
> the suspect has committed, is committing or is about to commit an offense.
>
>      *   *   *
>
> The probability of criminal activity is assessed under a reasonableness standard based
> on an examination of all facts and circumstances within an officer's knowledge at the
> time of an arrest.

Id. at 580 (citations, emphasis and internal quotation marks omitted).  "In the § 1983 context, the

question of whether probable cause existed is left for the jury, unless there is only one reasonable

determination possible."  Id. at 581.

   In support of their motion, the Defendants argue that, as probable cause existed for Sales'

arrest, no constitutional violation in fact occurred.  In doing so, they refer the Court to certain

deposition testimony, affidavits and other documentary evidence.  According to his deposition,

Vierheller took the initial complaint from Mrs. Rowe, who he interviewed, along with her children,

Josh Clayton, his father, and Chuck Byars, another student on the bus.  (Mot. for Summ. J. Ex. B

(The Dep. of Deputy Zack Vierheller ("Vierheller Dep.")) at 16, 18.)  He recalled that the Rowes and

the Claytons told the same story concerning the fight and Sales' actions.  (Vierheller Dep. at 18.)

Josh Clayton related to the officer that "[h]e went to get off the bus.  He said that Clemmie Sales said

to him, "Josh, I think he's talking to you.  Are you going to let him talk to you like that?"  (Vierheller

Dep. at 18-19.)  The statement was not, however, included in the offense report, although Vierheller

acknowledged that it should have been.  (Vierheller Dep. at 19.)  Clayton also stated that, when the

statement was made, everything had calmed down and he was on the first step down toward the doors of the bus. (Vierheller Dep. at 25.)

Vierheller testified that he attempted to interview Sales. (Vierheller Dep. at 17.) He averred in his affidavit that he "attempted to contact plaintiff to obtain her pertinent information and discuss the investigation with her. [He] identified [him]self as a deputy sheriff, confirmed the identification of Ms. Sales, and informed her that [he] was conducting an investigation. Ms. Sales refused to answer [his] questions and hung up the telephone on [him]." (Mot. for Summ. J. Ex. C (Aff. of Zack Vierheller) at ¶ 6.) Finally, Vierheller reviewed the relevant Tennessee statutes prior to bringing the charges. (Vierheller Dep. at 50.)

In his affidavit, Vierheller also stated with respect to the offenses charged as follows:

Probable cause existed that plaintiff violated T.C.A. §39-15-401([a])[2] - Child Abuse and Neglect because Ms. Sales neglected the welfare of the children on her bus and allowed an assault to occur on two children under the age of eighteen (18). By not taking any action to stop the fight, and actually encouraging the fight to continue after it had initially concluded, the evidence reve[a]led that probable cause existed that Ms. Sales had neglected children on her bus and allowed an assault to occur. Additionally, my investigation revealed that Ms. Sales physically picked up another child on the bus, Sebastian Rowe, and threw him into another seat, allegedly causing injury to his neck.

Probable cause existed that plaintiff violated T.C.A. §39-15-401([d])[3] - Child Abuse and Neglect because Ms. Sales neglected the welfare of the children on her bus and allowed an assault to occur on two children under the age of eighteen (18). By not taking any action to stop the fight, and actually encouraging the fight to continue after it had initially concluded, the evidence reve[a]led that probable cause existed that

---

[2]Tenn. Code Ann. § 39-15-401(a) provides that "[a]ny person who knowingly, other than by accidental means, treats a child under eighteen (18) years of age in such a manner as to inflict injury or neglects such a child so as to adversely affect the child's health and welfare commits a Class A misdemeanor . . .

[3]The pertinent portion of the statute refers to actions under subsection (a) that also constitutes assault. See Tenn. Code Ann. § 39-15-401(d).

Ms. Sales had neglected children on her bus and allowed an assault to occur. Additionally, my investigation revealed that Ms. Sales physically picked up another child on the bus, Sebastian Rowe, and threw him into another seat, allegedly causing injury to his neck.

The elements of T.C.A. § 39-11-402[4] - Criminal Responsibility for the Conduct of Another which my investigation revealed that probable cause existed for the arrest of Ms. Sales are that she . . . "acted with intent to promote or assist the commission of an offense . . . and solicited, directed, or aided . . . another person to commit an offense." Ms. Sales was in a position of authority as the only adult on the school bus, and had the ability to stop an assault from occurring.  Not only did she not prevent the assault, my investigation revealed that she allegedly encouraged a fight to occur with comments that she made to Clayton.

Probable cause existed that plaintiff violated T.C.A. §39-16-601 - Obstruction of Criminal Investigation because Ms. Sales refused to give an officer her general information---such as date of birth, name, social security number, address, phone number---which would assist an officer in the conducting of a criminal investigation.

Given the evidence which I gathered pursuant to my investigation of the complaint against Ms. Sales, I had a good faith, reasonable belief that probable cause existed that Ms. Sales committed the crimes which I charged her with.

---

[4]The statute states as follows:

A person is criminally responsible for an offense committed by the conduct of another if:

(1)   Acting with the culpability required for the offense, the person causes or aids an innocent or irresponsible person to engage in conduct prohibited by the definition of the offense;

(2)   Acting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense; or

(3)   Having a duty imposed by law or voluntarily undertaken to prevent commission of the offense and acting with intent to benefit in the proceeds or results of the offense, or to promote or assist in its commission, the person fails to make a reasonable effort to prevent commission of the offense.

7

(Vierheller Aff. at ¶¶ 9-13.)  Vierheller's Affidavit of Complaint included in the arrest warrants

contained the following narrative.

> On March 7, 2003 at 4:32 pm I responded to 9775 Hwy. 194 in reference to an assault on a school bus.  Upon arrival I spoke with complainant Kim Rowe, who stated that her son (Jeromy Voyles) was assaulted by Josh Clayton on the school bus. I interviewed Voyles who stated that Josh Clayton had been picking on him throughout the bus ride home.  Voyles stated that when the bus stopped in front of Josh Clayton's residence, he called Josh Clayton a dork.  Voyles stated that Clayton did not hear him and continued to move toward the exit of the bus.  Voyles stated that the bus driver, Mrs. Sales stated "Josh, I think he was talking about you."  Voyles stated that Clayton came back to the back of the bus and began hitting him in the head cau[s]ing a large knot on the left side of Voyles['] head.  Voyles stated that the bus driver did nothing to stop the assault . . . and watched the whole thing occur. Voyles had two siblings on the bus as well, who witnessed the incident, Sebastian Rowe and Sammantha Parker.  Sebastian Rowe stated that when he first got on the bus, this date the bus driver, Mrs. Sales did not like where he was sitting and told him to get in another seat.  Rowe stated that he didn't know what to do so he remained in his seat.  Rowe stated that Mrs. Sales picked him up by his arms and threw him into another seat.  I asked child if Mrs. Sales hurt him while throwing him into the seat, and he stated "yes, it hurt my neck".  Complainant Kim Rowe stated that her children were constantly coming home with complain[ts] of Mrs. Sales['] harsh and abusive behavior.  I made contact with Mrs. Sales, who declined to give a statement and refused to . . . give her dob, or address so that it could be added to this report. . . .

(Vierheller Aff. Ex. (Aff. of Compl.))

With respect to the officer's attempt to interview the Plaintiff, Sales offered the following

description of events in her deposition:

> A:      . . . It was an officer called that Friday after school, after I had transported all of my students off of the bus and got home.  Now, he presented himself as Officer Vierheller.
>
> Q:      Okay.  Vierheller?
>
> A:      Yes.
>
> Q:      Yes, ma'am.
>
> A:      And he --

*    *    *

A:    And he said he was an officer for the -- for a case concerning the -- the -- the defendants.

Q:    Who are the defendants?

A:    The Ross -- The -- Jeremy.  Jeremy's parents.

Q:    Okay.  The Rowe's?

A:    The Rowes.

Q:    Okay.

A:    And he was -- He told me that he was at their house for an investigation of a fight that occurred on the bus, and he called and said, "Are you Ms. Sales?"

I said, "Yes."

He said, "Did you have a fight on your bus?"

I said -- I believe I said, "Why?"

He said, "I'm the officer that's in charge of this investigation."

I said, "Well, I don't do investigations over the phone."  I said, "But I'd be more than willing for -- to cooperate with you if you come to my house."

And he said, "Just answer the questions over the phone."

I said, "I don't take questions like this over the phone," I said, "because I don't know who I'm talking to."

And he said, "You are hampering an investigation."

And I believe I just hung up in his face.

Q:    Is that the only time you've ever talked to any officer about this incident?

A:    Yes, sir.

(Mot. for Summ. J. Ex. A (The Dep. of Mrs. Clemmie Sales ("Sales Dep.")) at 38-40.)

In response to the motion, Sales argues that probable cause did not exist on the grounds the arrest warrants were issued based on false and misguided information. Although she points to no evidence specifically with respect to her contentions regarding probable cause, Sales has in her statement of facts referred to various portions of her complaint and deposition which are relevant to the probable cause issue. The Plaintiff avers that she did not approve of the manner in which Vierheller conducted the investigation, a complaint she passed on to Kelley. She further claims that she was falsely charged, as indicated by the subsequent dismissal of the case against her. Sales complains that she was handcuffed at her home at night in the presence of her crying family and that at one point in the investigation Vierheller made derogatory comments about her to other individuals involved therein.

None of Sales' contentions, however, even if true, rise to the level of a constitutional violation. The probable cause determination turns on what a "reasonable" officer would conclude based on the facts and circumstances known to him. If the circumstances, when viewed from an objective standpoint, support probable cause, it matters not what a particular officer's actual motives or feelings toward the arrestee may have been. See Prokos v. City of Athens, No. 02-4291, 2004 WL 2940867, at *3 (6th Cir. Dec. 21, 2004). Moreover,

> [a]n eyewitness identification will constitute sufficient probable cause unless, at the time of the arrest, there is an apparent reason for the officer to believe that the eyewitness was lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding his recollection of the confrontation. This comports with the general notion that, since eyewitnesses' statements are based on firsthand observations, they are generally entitled to a presumption of reliability and veracity.

Ahlers v. Schebil, 188 F.3d 365, 370 (6th Cir. 1999) (internal citations and quotation marks omitted).

> Once probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused. In fact, law

enforcement is under no obligation to give any credence to a suspect's story [or alibi] nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause.

Id. at 371 (internal citations and quotation marks omitted).

In this case, Vierheller responded to a complaint lodged by Voyles' mother with the sheriff's department and interviewed all of the children involved, their parents, as well as another student on the bus who did not participate in the incident. There is no evidence to suggest that the children interviewed, all of whom gave nearly identical accounts of the fight and Sales' response, were lying or mistaken. Although the officer failed to interview Sales herself, it is undisputed that he attempted to do so and was refused by the Plaintiff. Thus, any complaint on her part at this point concerning the officer's failure to interview her would be disingenuous. The facts as related by the witnesses were, in this Court's view, sufficient to warrant a belief by a prudent, reasonable police officer that Sales had committed an offense. See Crockett, 316 F.3d at 580. The fact that the case was ultimately dismissed is also of no assistance to the Plaintiff, as "[a]n arrest grounded in probable cause does not become invalid merely because the State chooses not to prosecute the individual or a jury opts for acquittal." See Williams v. Cambridge Bd. of Educ., 370 F.3d 630, 638 (6th Cir. 2004), reh'g en banc denied (Aug. 27, 2004).

The Plaintiff's offer of evidence concerning Thomas Minor does not alter the Court's opinion. Minor, a lawyer who appeared at the Fayette County court proceeding concerning the charges on behalf of the Plaintiff, later authored a letter to Sales' employer, Myles Wilson, the Director of Schools for the Fayette County Board of Education, in which he stated that "I am of the opinion that the Fayette County Sheriff's Deputy, Zack Vierheller, improperly handled the investigation of this

11

case and the charges should have never been brought against Ms. Sales." (Pl.'s Resp. to Defs.' Mot. for Summ. J. and Mem. in Supp. Ex. C1.)  When asked in his deposition why he used those words, Minor replied that "the best way I can say it, you know, over a year and a half later, is that perhaps placed in the hands of a different police officer it would have been handled differently and not have gotten to the point that it was taken." (Pl.'s Resp. to Defs.' Mot. for Summ. J. and Mem. in Supp. Ex. C ("The Dep. of Mr. Thomas Minor ("Minor Dep.")) at 32.)  The Court has already found that the evidence obtained from the witnesses to the incident established probable cause to charge the Plaintiff.  The post-incident opinion of Sales' counsel to the contrary in this instance constitutes nothing more than speculation and conjecture.

In addition, to the extent the Plaintiff attempts to assert an excessive force claim against the Defendants under the Fourth Amendment for the use of handcuffs during her arrest, the claim is without merit, as, absent an allegation of physical injury, which has not been made here, "the handcuffing of an individual incident to a lawful arrest is insufficient as a matter of law to state a claim of excessive force under the Fourth Amendment." See Neague v. Cynkar, 258 F.3d 504, 508 (6th Cir. 2001) (internal footnote omitted).  Finally, Defendants Wilhite and Cohea were entitled to rely on the facially valid warrant in effecting the arrest.  See Cunningham, 337 F.Supp.2d at 1073 (arresting officers entitled to rely on facially valid warrant without violating Fourth Amendment). Based on the Court's finding that probable cause existed for the issuance of the arrest warrant, the Plaintiff's § 1983 claim against the Defendants under the Fourth Amendment cannot stand.[5]

---

[5]As a consequence of the Court's finding that no federal constitutional violation occurred, it is not necessary for the Court to address the existence of municipal or supervisory liability. See Williams ex rel. Hart v. Paint Valley Local Sch. Dist., 400 F.3d 360, 364-65 (6th Cir. 2005)

With respect to the Plaintiff's Fourteenth Amendment claims of violation of her due process rights, the Supreme Court has held that "when government behavior is governed by a specific constitutional amendment, due process analysis is inappropriate. Although not all actions by police officers are governed by the Fourth Amendment, the constitutionality of arrests by state officials is governed by the Fourth Amendment rather than due process analysis." Berg v. County of Allegheny, 219 F.3d 261, 268-69 (3d Cir. 2000), cert. denied, 531 U.S. 1072, 121 S.Ct. 762, 148 L.Ed.2d 664 (2001) (citing County of Sacramento v. Lewis, 523 U.S. 833, 842-43, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)) (internal citations omitted); see also Alexander v. Beale Street Blues Co., Inc., 108 F.Supp.2d 934, 940-41 (W.D. Tenn. 1999). Further, in criminal matters, the Fourteenth Amendment does not mandate additional procedures beyond those required under the Fourth Amendment. Radvansky, 395 F.3d at 313. Consequently, the Plaintiff's claims arising under the Fourteenth Amendment are DISMISSED. Id. (defendant entitled to summary judgment on Fourteenth Amendment claim in case involving alleged arrest without probable cause; rather, analysis appropriate under Fourth Amendment).

It is unclear from the complaint or the response to the dispositive motion the exact nature of the Plaintiff's claims under the First and Sixth Amendments and it appears, in fact, that these claims may have been abandoned. To the extent that is not the case, however, the Court finds they are meritless.

---

(§ 1983 actions against a municipality require the deprivation of a constitutional right); Mills v. City of Barbourville, 389 F.3d 568, 580-81 (6th Cir. 2004), reh'g en banc denied (Mar. 3, 2005) (supervisory liability under § 1983 requires a constitutional deprivation). Likewise, the Court need not address the Defendants' defense of qualified immunity. See Ahlers, 188 F.3d at 374 (where "there is no claim under § 1983, . . . Defendants have no need for a qualified immunity defense.")

The complaint alleges in conclusory fashion that the Plaintiff was denied access to the courts, a violation of the First Amendment, presumably based on Defendant Kelley's failure to discipline Vierheller.  In order to establish such a claim, the Plaintiff must "present evidence that the defendants' actions actually rendered a state court remedy ineffective." Boone v. Spurgess, 385 F.3d 923, 931 (6th Cir. 2004) (quoting Swekel v. City of River Rouge, 119 F.3d 1259, 1260 (6th Cir. 1997)).  The Plaintiff has not alleged, much less demonstrated, that she has been denied the ability to seek redress against Vierheller or any of the other Defendants in state court.  Sales' Sixth Amendment claim fares no better, as the amendment only applies to criminal prosecutions.  See Burchett v. Kiefer, 310 F.3d 937, 947 (6th Cir. 2002).  In this case, no prosecution occurred.

Having disposed of the Plaintiff's claims under federal law, the Court now turns to her state claims of libel and slander.  The exercise by a district court of supplemental, or pendent, jurisdiction over state law claims is governed by 28 U.S.C. § 1367, which expressly permits the Court to decline the exercise of jurisdiction when it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3).  Absent any remaining federal claims against the Defendants, the Court, in its sound discretion, hereby dismisses without prejudice Sales' claims against the Defendants under state law.  See Weeks v. Portage County Executive Offices, 235 F.3d 275, 279-80 (6th Cir. 2000) (district court's decision to decline to exercise supplemental jurisdiction lies within its sound discretion).

<u>CONCLUSION</u>

For the reasons articulated herein, the motion of the Defendants for summary judgment is GRANTED. Accordingly, the Clerk of Court is hereby directed to enter judgment for the Defendants.

IT IS SO ORDERED this 18 day of May, 2005.

J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 58 in case 2:03-CV-02946 was distributed by fax, mail, or direct printing on May 19, 2005 to the parties listed.

---

James I. Pentecost
PENTECOST GLENN & RUDD, PLLC
106 Stonebridge Blvd.
Jackson, TN 38305

Brandon O. Gibson
PENTECOST GLENN & RUDD, PLLC
106 Stonebridge Blvd.
Jackson, TN 38305

Randall Blake Tolley
LAW OFFICE OF RANDALL B. TOLLEY
242 Poplar Ave.
Memphis, TN 38103

Honorable J. Breen
US DISTRICT COURT